IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BELTEX CORPORATION d/b/a FRONTIER MEATS, § § § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 4:19-CV-00133 | |
| § | | |
| ROBERT HEATH TRUCKING, INC. and ROBERT HEATH LOGISTICS, INC., LEGAL FREIGHTLINES, LLC § § § § | | |
| Defendants, § § | | |
| v. § § | | |
| LEGAL FREIGHTLINES, LLC. § § | | |
| Third Party Defendant. § | | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AGAINST ROBERT HEATH TRUCKING, INC. AND ROBERT HEATH LOGISTICS, INC., ORIGINAL COMPLAINT AGAINST LEGAL FREIGHTLINES, LLC, AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Beltex Corporation d/b/a Frontier Meats files this First Amended Complaint Against Defendants Robert Heath Trucking, Inc., and Robert Heath Logistics, Inc., and Original Complaint Against Defendant Legal Freightlines, LLC.

**I.
SUMMARY OF ARGUMENTS**

1.    Plaintiff Beltex Corporation d/b/a Frontier Meats entered into an agreement with Defendants Robert Heath Trucking, Inc. (hereinafter "Heath Trucking") and Robert Heath Logistics, Inc. (hereinafter "Heath Logistics") for the shipment of Plaintiff's goods by Defendants from Fort Worth, Texas to California. Legal Freightlines, LLC (hereinafter "Legal Freightlines")

ferried the shipment to its destination. During the shipment, Plaintiff's goods were damaged.

2.      Because Heath Trucking and Heath Logistics maintained an extraordinary degree of control over Legal Freightlines, Heath Trucking and Heath Logistics are liable for the actions of Legal Freightlines as their employee-agent, pursuant to the doctrine of respondeat superior.

3.      Heath Logistics was the agent of Heath Trucking under the doctrine of actual authority because Heath Trucking granted Heath Logistics authority to act on its behalf and Heath Logistics acted within the scope of that authority.

4.      Heath Logistics was the agent of Heath Trucking under the doctrine of apparent authority because Heath Trucking knowingly held out Heath Logistics, and allowed Heath Logistics to hold itself out, as having authority to act on Heath Trucking's behalf.

5.      Plaintiff seeks to recover the damages to Plaintiff's goods from Legal Freightlines under the authority of the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

6.      Plaintiff further seeks to recover the damages to Plaintiff's goods from Heath Trucking and Heath Logistics in their capacity as carriers or freight forwarders under the authority of the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

7.      As alternative to its Carmack Amendment claims against Heath Trucking and Heath Logistics, Plaintiff further seeks to recover the damages to Plaintiff's goods from Heath Trucking and Heath Logistics in their capacity as freight brokers for breach of contract and negligent destruction of Plaintiff's goods.

## II.
## THE PARTIES

8.      Plaintiff, Beltex Corporation d/b/a Frontier Meats (hereinafter referred to as

"Plaintiff" or "Frontier Meats"), is a Texas Corporation with its principal place of business in the Tarrant County, Texas.

9. Defendant Robert Heath Trucking, Inc. (hereinafter referred to as "Heath Trucking"), is a corporation incorporated in the State of Texas that can be served through its registered agent, Terri Heath Shankle at 1201 East 40th Street, Lubbock, Texas 75238.

10. Defendant Robert Heath Logistics, Inc. (hereinafter referred to as "Heath Logistics"), is a corporation incorporated in the State of Texas that can be served through its registered agent, James C. Shankle at 10880 Rockwall Road, Dallas, Texas 75238.

11. Defendant Legal Freightlines, LLC (hereinafter referred to as "Legal Freightlines"), is a limited liability company organized in the State of California doing business in Texas who is not registered to do business in Texas and who can therefore be served through the Secretary of State of Texas.

## III.
## JURISDICTION AND VENUE

12. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. §1331, as this case involves questions of federal law.

13. Venue is proper in, and Defendants and Third-Party Defendant are subject to the personal jurisdiction of this Court because Defendants and Third-Party Defendant maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## IV.
## FACTUAL ALLEGATIONS

14. On or about May 2, 2018, Heath Trucking and Heath Logistics (collectively "Heath Defendants") entered into a shipping agreement with Frontier for the shipment of beef trimming

combos and boxed vacuum packaged meat (hereafter referred to as the "Shipment") to be transported from Fort Worth, TX to Los Angeles, CA.

15. While Plaintiff discussed this arrangement with the Heath Defendants, the Heath Defendants held themselves out as either freight forwarders or common carriers.

16. To wit, the individuals with whom Plaintiff communicated with regards to the shipping arrangement represented that they were acting on behalf of Heath Trucking. These individuals sent Plaintiff several emails with signature lines listing their employer as "Robert Heath Trucking, Inc." These emails represented that the individuals with whom Plaintiff had negotiated held titles such as "Sr. Logistics Coordinator" and "Senior Account Manager" with Heath Trucking.

17. Further, Heath Trucking is registered as a motor carrier with the Federal Motor Carrier Safety Administration (FMCSA).

18. Heath Trucking's website indicates that Heath Logistics is nothing more than a "division" of Heath Trucking which provides services "into and out of regions we do not typically operate with our asset based fleet." The website also indicates that Heath Trucking will haul freight to a particular region and arrange for "local delivery services."

19. These facts led Plaintiff to believe that it was dealing with Heath Trucking either directly or through agents acting on its behalf. To that end, Plaintiff repeatedly addressed correspondence to Heath Trucking, rather than Heath Logistics.

20. Plaintiff relied on the reputation of Heath Trucking when it entered the arrangement to ship its goods. Further, Plaintiff relied on the representations contained on Heath Trucking's website, and the information contained in the signature lines of several emails from representatives of the Heath Defendants when it made the decision to make shipping arrangements with the Heath

Defendants.

21.     On May 2, 2018, Defendant Legal Freightlines took possession of the Shipment.

22.     Upon taking possession, Legal Freightlines issued a bill of lading for the Shipment. The bill of lading contained no language limiting the liability of the either Legal Freightlines or the Heath Defendants. The Shipment was to be delivered before May 4, 2018 to Frontier's two customers in California. Frontier's first customer in California was to receive the beef trimming combos' portion of the Shipment and Frontier's Second customer in California was to receive the boxed vacuum packaged meat portion of the Shipment.

23.     During the journey, Legal Freightlines' truck malfunctioned and was unable to deliver the Shipment. This caused delay and spoliation of the Shipment. Eventually, Legal Freightlines sent another truck to complete the delivery.

24.     Frontier discovered that the Defendants' driver failed to deliver the Shipment to its two customers by May 4, 2018 and instead attempted to deliver and tender the Shipment to Frontier's first customer on or about May 7, 2018. As a result of Defendants failure to deliver on time, the meat which was not vacuum packed was not even fit for human consumption when the Shipment finally arrived. Of course, Frontier's first customer rejected the Shipment because it was totally unfit for its commercial purpose.

25.     In order to mitigate Frontier's damages, Frontier instructed Defendants to render only the spoiled, non-vacuum packed meats portion of the Shipment at a rendering facility, Darling International, located in close proximity to Frontier's first customer's facility and to proceed with delivering the boxed vacuum packed portion of the Shipment to Frontier's second customer; Golden West Trading Company. However, despite Frontier's directive, Defendants took it upon themselves to instruct the rendering company to unpack and render the entire Shipment, including

the boxed vacuum packaged portion of the Shipment which were unspoiled and fit for their commercial purpose. Further, Defendants failed to notify Frontier of its willful destruction of those portions which were as yet unspoiled. Frontier was only made aware of this when Golden West contacted Frontier on or about May 9, 2018, inquiring about the status of the boxed, vacuum packaged portion of the Shipment.

26. During the entire time that the Shipment was in the possession of Legal Freightlines, the Heath Defendants exercised a substantial degree of control over Legal Freightlines.

27. The Heath Defendants set exact parameters for the methods by which Legal Freightlines was to carry the shipment. The Heath Defendants mandated the precise temperature of the trailer, the schedule of the drivers, the number of workers which Legal Freightlines was to use on the Shipment, the standard of performance, and the exact route of the Shipment. In addition to these dictates, the Heath Defendants required that Legal Freightlines must clear all "PROBLEMS/RESCHEDULES" with the Heath Defendants before taking any action. Also, the Heath Defendants commanded Legal Freightlines to follow an eight-point instructional sheet on how to properly fuel its truck.

28. Further, the Heath Defendants set punitive fines for Legal Freightlines' failure to *daily* inform the Heath Defendants of the exact progress of the Shipment. These fines also applied to any failure abide by the strict schedule set by the Heath Defendants. To avoid these fines, Legal Freightlines had to seek the express permission of the Heath Defendants before deviating from previous instructions.

29. To control Legal Freightlines's performance, the Heath Defendants required that Legal Freightlines make daily reports to the Heath Defendants and utilize so-called "Macropoint"

technology. Macropoint technology provides real time tracking of any truck connected to the system. This technology thus allowed the Heath Defendants to monitor the exact location of the Shipment in real time, as well as receive various other analytic information. This Macropoint technology provides such a comprehensive mechanism for micromanagement that the Heath Defendants could not have monitored Legal Freightlines more closely absent a representative riding "shotgun" in the cab.

30. The Heath Defendants instructed Legal Freightlines where to deliver the shipment upon discovering its spoliation.

31. A representative of the Heath Defendants referred to the driver of the truck carrying the Shipment as "my driver" and requested additional information from Plaintiff so that the representative could instruct the driver how to perform the delivery.

32. The Heath Defendants also policed the driver's hours, making certain that he was in compliance with applicable laws.

33. Due to Defendants breach, negligence, delay, unilateral action, and unnecessary destruction of valuable boxed, vacuumed packaged meats, Frontier not only lost the value of the Shipment, but also incurred extra costs for additional and unnecessary unpacking and rendering costs.

34. The Shipment included 15,066.37 lbs. of fresh trimming combos for Frontier's first customer valued at $25,038.08 and 324 boxes of beef cuts, weighing 17,746.42 lbs., valued at $72,459.71. Additionally, Frontier was forced to pay the rendering fee of $1,876.00.

35. After the total loss of the Shipment, the Heath Defendants maintained that they were carriers within the meaning of the Carmack Amendment. Specifically, employees of the Heath Defendants claimed that the Heath Defendants were protected by federal regulations which

apply only to carriers within the meaning of the Interstate Commerce Act.

36. After the loss of the Shipment, the Heath Defendants represented that Heath Logistics, a broker registered with FMCSA, was in fact the entity with which Plaintiff had an agreement. The Heath Defendants further represented that, despite their previous indications, they had acted as a broker, rather than as a carrier. This obviously did not comport with Plaintiff's understanding of the agreement.

37. Frontier's attempts to resolve the aforementioned issues with Defendants directly were unsuccessful, causing Frontier to incur the additional costs of obtaining legal representation to resolve this matter. To date, Frontier has incurred over $104,873.79 in damages as a direct result of Defendants' negligence and failure to perform under the term of the contract entered into by and among the Parties to this lawsuit on May 2, 2018.

## V.
## AGENCY RELATIONSHIPS BETWEEN THE DEFENDANTS

### A. Respondeat Superior

38. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

39. The acts of Legal Freightlines, employee, were performed while in the employment of the Heath Defendants, and were within the scope of that employment or within the authority delegated to the employee.

40. The Heath Defendants had the right to assign the Legal Freightlines tasks and maintained the right to control the means and details of the process used to accomplish that task.

41. The Heath Defendants mandated the tools which Legal Freightlines employed, and the manner in which it used such tools.

42. The Heath Defendants closely monitored and managed Legal Freightlines progress

during the job.

43. The Heath Defendants maintained the right to order Legal Freightlines to perform in a manner prescribed solely by the Heath Defendants and required Legal Freightlines to seek express permission before deviating from Heath Defendants' strict orders.

### B. Actual Authority

44. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

45. At the time that the events made the basis of this suit occurred, Heath Trucking had intentionally granted Heath Logistics authority to act on Heath Trucking's behalf.

46. Alternatively, at the time that the events made the basis of this suit occurred, Heath Trucking had, through lack of due care, allowed Heath Logistics to believe that actions taken on behalf of Heath Trucking were authorized.

47. At the time that the events made the basis of this suit occurred, Heath Logistics was acting within the scope of the authority granted by Heath Trucking.

### C. *Alternatively*, Apparent Authority

48. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

49. During the incidents made basis of this suit, Heath Trucking held Heath Logistics out as having authority to act on Heath Trucking's behalf.

50. During the incidents made basis of this suit, Heath Trucking knowingly permitted Heath Logistics to hold itself out as having authority to act on Heath Trucking's behalf. Alternatively, Heath Trucking acted with such a lack of ordinary care as to clothe Heath Logistics with the indicia of authority to act on Heath Trucking's behalf.

51. Heath Trucking's conduct caused Plaintiff to reasonably believe that Heath Logistics had authority to act on Heath Trucking's behalf.

52. Plaintiff justifiably relied on Heath Logistics' authority to act on Heath Trucking's behalf.

## VI.
## CLAIMS AGAINST DEFENDANT LEGAL FREIGHTLINES

### CLAIM UNDER THE CARMACK AMENDMENT

53. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

54. Plaintiff brings a claim under the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

55. Legal Freightlines is a carrier for the purposes of the Carmack Amendment.

56. Plaintiff's goods were delivered to Legal Freightlines in good condition.

57. Legal Freightlines issued a bill of lading for the transportation of Plaintiff's goods.

58. Plaintiff's goods were damaged before delivery to their final destination.

59. Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

## VII.
## CLAIMS AGAINST DEFENDANT HEATH TRUCKING

### Count One: CLAIMS UNDER THE CARMACK AMENDMENT

60. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

61. Plaintiff brings a claim under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), (2).

62. Heath Trucking is a carrier or freight forwarder for the purposes of the Carmack Amendment.

63. Plaintiff's goods were delivered to Heath Trucking, by and through its employee-agent Legal Freightlines, in good condition.

64. Heath Trucking, by and through its employee-agent Legal Freightlines, issued a bill of lading for the transportation of Plaintiff's goods.

65. Plaintiff's goods were damaged before delivery to their final destination.

66. Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

### Count Two: *Alternatively*, BREACH OF CONTRACT

67. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

68. As alternative to Count One against Heath Trucking, Heath Trucking is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

69. Plaintiff and Heath Trucking, by and through its agent Heath Logistics, entered into a valid contract whereby Heath Trucking agreed to provide shipping services.

70. Plaintiff fully performed its obligations under the contract.

71. Heath Trucking breached its contractual obligations by failing to adequately ensure the safety of the Shipment, allowing it to be destroyed.

72. Plaintiff has suffered $104,873.79 in damages as a result of Heath Trucking's breach.

### Count Three: *Alternatively,* NEGLIGENCE

73. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

74. As alternative to Count One against Heath Trucking, Heath Trucking is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

75. As broker, Heath Trucking had a legal duty find, negotiate with, and hire a reasonably competent carrier for the shipment of Plaintiff's goods. This duty also encompasses an obligation to refrain from entrusting Plaintiff's goods to a carrier which would expose the goods to unreasonable risk of loss.

76. Heath Trucking breached this legal duty by failing to hire a reasonably competent carrier and by hiring one which was improperly insured, exposing Plaintiff's goods to unreasonable risk.

77. In breaching this duty, Heath Trucking failed to act as a person of ordinary prudence would under similar circumstances.

78. Plaintiff suffered $104,873.79 in damages which were proximately caused by the conduct of Heath Trucking.

## VIII.
## CLAIMS AGAINST DEFENDANT HEATH LOGISTICS

### Count One: CLAIMS UNDER THE CARMACK AMENDMENT

79. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

80. Plaintiff brings a claim under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), (2).

81. Heath Logistics is a carrier or freight forwarder for the purposes of the Carmack

Amendment.

82. Plaintiff's goods were delivered to Heath Logistics, by and through its employee-agent Legal Freightlines, in good condition.

83. Heath Logistics, by and through its employee-agent Legal Freightlines, issued a bill of lading for the transportation of Plaintiff's goods.

84. Plaintiff's goods were damaged before delivery to their final destination.

85. Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

### Count Two: *Alternatively*, BREACH OF CONTRACT

86. Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

87. As alternative to Count One against Heath Logistics, Heath Logistics is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

88. Plaintiff and Heath Logistics entered into a valid contract whereby Heath Trucking agreed to provide shipping services.

89. Plaintiff fully performed its obligations under the contract.

90. Heath Logistics breached its contractual obligations by failing to adequately ensure the safety of the Shipment, allowing it to be destroyed.

91. Plaintiff has suffered $104,873.79 in damages as a result of Heath Logistics' breach.

### Count Three: *Alternatively,* NEGLIGENCE

92. Plaintiff incorporates by reference each and every of the preceding allegations as

though fully set forth herein.

93. As alternative to Count One against Heath Logistics, Heath Logistics is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

94. As broker, Heath Logistics had a legal duty find, negotiate with, and hire a reasonably competent carrier for the shipment of Plaintiff's goods. This duty also encompasses an obligation to refrain from entrusting Plaintiff's goods to a carrier which would expose the goods to unreasonable risk of loss.

95. Heath Logistics breached this legal duty by failing to hire a reasonably competent carrier and by hiring one which was improperly insured, exposing Plaintiff's goods to unreasonable risk.

96. In breaching this duty, Heath Logistics failed to act as a person of ordinary prudence would under similar circumstances.

97. Plaintiff suffered $104,873.79 in damages which were proximately caused by the conduct of Heath Logistics.

## IX.
## ATTORNEY'S FEES (as to Breach of Contract Claims)

98. Because of Defendants' conduct, Plaintiff has been compelled to engage the services of attorneys to prosecute these claims. Plaintiff is entitled to recover a reasonable sum for the necessary services of the attorneys in the preparation and trial of this action and for any appeals to the circuit court of appeals or the Supreme Court pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and 38.001.

## X.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff Beltex Corporation d/b/a Frontier Meats respectfully prays the court to enter a judgment in its favor against Defendants and issue an order:

a. Entering judgment in the amount of all damages suffered by Plaintiff as a result of the damage to Plaintiff's goods;

b. Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action;

c. Awarding reasonable and necessary attorney's fees; and

d. Awarding such other general and equitable relied as this Court deems equitable and just.

## XI.
## JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

TAILIM SONG LAW FIRM

*/s/ Tailim Song*

_____
Tailim Song
State Bar No. 00792845
tsong@tailimsong.com
8111 LBJ Freeway, Suite 480
Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On October 14, 2019, the foregoing document was filed with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Tailim Song*
_____
Tailim Song