# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **BELTEX CORPORATION d/b/a** | § | |
| **FRONTIER MEATS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:19-cv-00133** |
| **v.** | § | |
| | § | |
| **ROBERT HEATH TRUCKING, INC.** | § | |
| **and ROBERT HEATH LOGISTICS,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LEGAL FREIGHTLINES, LLC.** | § | |
| | § | |
| **Third Party Defendant** | | |

## ROBERT HEATH DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Defendants Robert Heath Trucking, Inc. and Robert Heath Logistics, Inc.  (the "Robert Heath Defendants") file this Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to the Court's Order Granting Motion To Dismiss And Setting Deadline For Amended Complaint [Dkt. #22] ("Dismissal Order").  Plaintiff's claims for breach of contract, negligence and attorneys' fees against the Robert Heath Defendants are preempted by the Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment"), 49 U.S.C. § 14706, *et seq*., and they ignore the specific terms of the Dismissal Order.  Plaintiff's claims for breach of contract, negligence and attorneys' fees against the Robert Heath Defendants are also preempted by the Federal Aviation Administration

1

Authorization Act. In support thereof, the Robert Heath Defendants respectfully show the Court the following:

## BACKGROUND

Plaintiff alleges that it sought and obtained interstate transportation of Plaintiff's meat from Fort Worth, Texas to Los Angeles, California.  Plaintiff alleges that on May 2, 2018, it tendered two shipments of meat to Defendant Legal Freightlines and that the shipments were late, mis-delivered and wrongfully destroyed.  After the Court specifically held that all of Plaintiff's non-Carmack Amendment claims against the Robert Heath Defendants are preempted, Plaintiff filed its First Amended Complaint, once again asserting non-Carmack claims against the Robert Heath Defendants for breach of contract, negligence and attorney's fees.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the [party asserting the claims].'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  A plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although detailed factual allegations are not required, Plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  The claims must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability."  *Id*. at 555, 557 n.5.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

2

*v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).  For a claim

to have facial plausibility, a plaintiff must plead facts that allow the court to draw the reasonable

inference that the defendant is liable for the alleged misconduct.  *Gonzalez* v. Kay, 577 F.3d 600,

603 (5th Cir. 2009).  Therefore, "where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that

the pleader is entitled to relief."  Id. (internal quotations omitted).

## ANALYSIS

1. ***The Carmack Amendment Completely Preempts Plaintiffs' State Law Claims Arising Out of the Interstate Transportation of Cargo***

The Court has already ruled that Plaintiff's breach of contract, negligence and attorney's

fees claims against the Robert Heath Defendants are preempted by the Carmack Amendment.

Specifically, the Court stated:

> Plaintiff's state-law claims for breach of contract, negligence, and gross negligence arising
> as a result of the alleged untimely delivery and resulting spoilage of certain beef goods
> shipped in interstate commerce by common carrier are preempted by the Carmack
> Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1).

Dkt. #22, p. 2.  The Court went on to hold: "If Plaintiff desires to pursue its claims, it must file an

amended complaint asserting a claim under the Carmack Amendment…."  *Id.*  However,

Plaintiff's First Amended Complaint still asserts claims against the Robert Heath Defendants for

state common law breach of contract, negligence and attorney's fees.  Dkt. #23, paragraphs 60-98.

The damages sought under Plaintiff's state common law claims against the Robert Heath

Defendants are the same $104,873.79 damages that Plaintiff seeks to recover from the motor

carrier defendant, Legal Freightlines, for damage to the cargo being shipped.  See Dkt. # 23,

paragraphs72, 85, 91 and 97.  *See Hayes v. Stevens Van Lines, Inc., No. 4:14-cv-982-O, 2015 WL*

*11023794 at \*3 (N.D. Tex. Jan. 27, 2015)* ("Because Plaintiffs seek damages in the amount of their

3

damaged household items, the Court finds that this claim is preempted by the Carmack Amendment."). The First Amended Complaint's breach of contract, negligence and attorney's fee claims against the Robert Heath Defendants are non-Carmack Amendment claims for damage to the interstate shipment at issue, and as such, these claims are preempted by 49 U.S.C. § 14706 and barred by the Court's Dismissal Order.  The breach of contract, negligence and attorney's fee claims should accordingly be dismissed.

### 2.  *Plaintiff's Common Law Claims Against The Robert Heath Defendants as Brokers Are Preempted by Carmack*

Plaintiff's breach of contract claims against the Robert Heath Defendants assert that as a transportation broker, "Heath …breached its contractual obligations by failing to adequately ensure the safety of the shipment, allowing it to be destroyed."  Dtk. #23, para. 71 and 90. The alleged breach of contract damages are the identical damages as the alleged Carmack damages for the loss of the shipment.  This purported breach of contract claim is essentially a claim for loss or damage to the interstate shipment against an alleged transportation broker.  Regardless how Plaintiff tries to characterize its breach of contract claim, this purported breach of contract claim against the Heath Defendants for loss and damage to the interstate shipment is a Carmack claim, not a breach of contract claim.  "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Hoskins v. Bekins Van Lines*, 343 F3d 769, 773 (5th Cir. 2003) quoting *Beneficial Nat'l Bank v. Anderson*, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003). As the *Hoskins* court explained:

> We are persuaded by the preceding decisions and analysis offered by the Supreme Court, and this Court, that Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier. Accordingly, we hold that the complete pre-emption doctrine applies.  Because the Carmack Amendment provides the exclusive

4

cause of action for such claims, we find that Hoskins' claims "only arise[ ] under federal law….

*Hoskins*, 343 F.3d at 778.

Plaintiff's First Amended Complaint attempts to make claims against the Robert Heath Defendants for "failing to adequately ensure the safety of the Shipment, allowing it to be destroyed."  Whether these claims are styled as negligence, breach of contract, conversion, or any other state law cause of action, they are preempted.  See *Moffit v. Bekins Van Lines, Co*., 6 F.3d 305, 306 (5th Cir. 1993) (holding that Carmack pre-empted all of plaintiff's state law claims including 1) the tort of outrage, 2) intentional and negligent infliction of emotional distress, 3) breach of contract, 4) breach of implied warranty, 5) breach of express warranty, 6) violation of the Texas Deceptive Trade Practices Act sections 17.46 and 17.50, 7) slander, 8) misrepresentation, 9) fraud, 10) negligence and gross negligence, and 11) violation of the common carrier's statutory duties as a common carrier under state law).

Regardless how they are monikered, Plaintiff's common law contract claims against the Robert Heath Defendants as brokers are barred by Carmack.

### 3.  *Plaintiff's Negligence Claims Against the Robert Heath Defendants as Brokers Should be Dismissed.*

Plaintiff's claims for negligence are also preempted.  Plaintiff's negligence claims against the Robert Heath Defendants assert that the Robert Heath Defendants are liable for negligence as brokers for the shipment at issue.  Dkt. #23, paragraphs 74 and 93.  For purposes of a Carmack Amendment claim, a broker is defined as:

> a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2); *Wise Recycling, LLC v. M2 Logistics*, 943 F. Supp. 2d 700, 702–03 (N.D. Tex. 2013). Specifically, Plaintiff alleges that the Robert Heath Defendants failed to hire a reasonably competent motor carrier for Plaintiff's shipment. Once again, the damages claimed for negligence in the First Amended Complaint are the exact same damages for the loss of the Shipment that Plaintiff claims in its Carmack Amendment cause of action.

Ample case law holds that a Carmack Amendment claim may not be brought against a transportation broker for negligent selection of a motor carrier. *See Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F.Supp.2d 638, 641 (N.D.Tex.2010) (declining to apply Carmack Amendment claim to defendant who acted as a broker, not a carrier); *see also Huntington Operating Corp. v. Sybonney* *703 Exp., Inc.*, No. H–08–781, 2009 WL 2423860, at *3 n. 1 (S.D.Tex. Aug. 3, 2009) (holding Carmack Amendment does not extend to transportation brokers and collecting cases). A broker is not liable for the negligence of its independent contractor trucking company or the driver hired and supervised by that company. *Enbridge Energy, LP v. Imperial Freight Inc.*, 2019 WL 1858881, at *1 (S.D. Tex. April 25, 2019) citing *Dragna v. KLLM Transp. Servs., L.L.C.*, 638 F. App'x 314, 316 (5th Cir. 2016).

Further, even if the Carmack Amendment did not preempt negligence claims against the Robert Heath Defendants, the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, preempts claims against carriers and brokers alike, including negligence and contract claims. *See, Wise Recycling, LLC v. M2 Logistics*, 943 F. Supp. 2d at 702–03.

The FAAAA preempts state regulation of the trucking industry, including state-law private claims. *Enbridge Energy, LP v. Imperial Freight Inc.*, 2019 WL 1858881, at *2. It precludes states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and

6

effect of law related to a price, route, or service of any motor carrier [or] broker ... with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

Plaintiff claims that the Robert Heath Defendants were negligent in "failing to hire a reasonably competent carrier and by hiring one which was improperly insured, exposing Plaintiff's goods to unreasonable risk." Dkt. # 23, para. 76 and 95. The FAAAA preempts common-law negligent hiring claims against freight brokers. *Enbridge Energy, LP v. Imperial Freight Inc.,* 2019 WL 1858881, at *2; *See, e.g., Alpine Fresh v. Jala Trucking*, 181 F. Supp. 3d 250, 253 (D.N.J. 2016) (dismissing the common law negligent hiring claim against the broker alter finding that the FAAAA expressly prohibited state regulation of "interstate services of any ... broker" and that the language "related to a price, route or service of any ... broker" precluded the negligent hiring claim); *Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc*., 888 F. Supp. 2d 197, 201 (D.N.H. 2012) (holding that the shipper's tort claims against the broker were expressly preempted by 49 U.S.C. § 14501(c)(1)). The claim that a broker failed to verify adequate insurance coverage of cargo also falls within the FAAAA and is, therefore, preempted by it. *Huntington Operating Corp. v. Sybonney Exp., Inc.,* No. H–08–781, 2009 WL 2423860, at *3.

Plaintiff's negligence claims are clearly preempted by the FAAAA, and they should be dismissed.

It is important to note that Plaintiff is not left without a remedy in this situation:

> When a state common-law claim against a motor carrier arising out of damage to cargo in interstate transportation is preempted, a plaintiff still has a claim against the carrier under the Carmack Amendment. But, because the Carmack Amendment creates a federal statutory remedy against motor carriers only, when a state common-law claim against a motor private carrier or a broker is preempted by 49 U.S.C. § 14501(c)(1), a plaintiff is left with no claim at all against a defendant who has successfully invoked preemption. While that may seem to be an anomalous result of the interplay between the ICCTA preemption provision and the Carmack Amendment, there is no good basis for arguing that Congress did not intend that result, given its interest in standardizing and simplifying the adjudication of claims arising in the context of interstate shipping. *See Rini*, 104 F.3d at 504. Moreover,

the ICCTA preemption provision was enacted long after the Carmack Amendment, *see* Robert D. Moseley, Jr. & C. Fredric Marcinak, Federal Preemption in Motor Carrier Selections Cases Against Brokers and Shippers, 39 Transp. L.J. 77, 79 (2012), and, presumably, was enacted with the Carmack Amendment in mind. Finally, it is worth bearing in mind that a plaintiff that loses its common-law claim against an entity such as a broker is not denied an avenue for recovery; such a plaintiff still has its Carmack Act claim against the carrier.

*Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc.*, 888 F. Supp. 2d 197, 207 (D.N.H. 2012).

Plaintiff's claims herein are solely Carmack claims, and Plaintiff's non-Carmack claims should be dismissed.

## CONCLUSION

For the reasons stated herein, Defendants Robert Heath Trucking, Inc. and Robert Heath Logistics, Inc. respectfully request that this Motion to Dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be granted, and all of Plaintiff's breach of contract, negligence and attorney's fee claims should be dismissed. Defendants request such other and further relief to which they may demonstrate themselves justly entitled.

Respectfully submitted,

 */s/ Vic H. Henry*
Vic H. Henry
vhhenry@hoaf.com
TBA No. 09484250

**HENRY ODDO AUSTIN & FLETCHER,**
 **a Professional Corporation**
1700 Pacific Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 658-1900
Facsimile: (214) 658-1919

**ATTORNEYS FOR ROBERT HEATH**
**DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2019, a true and correct copy of the foregoing was served on the following counsel of record via the Court's ECF system

Christopher Valentine
Talim Song
Tailim Song Law Firm
8111 LBJ Freeway
Suite 480
Dallas, TX 75251

*/s/ Vic H. Henry* _____
Vic H. Henry

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| BELTEX CORPORATION d/b/a FRONTIER MEATS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-00133 |
| ROBERT HEATH TRUCKING, INC. and ROBERT HEATH LOGISTICS, INC., LEGAL FREIGHTLINES, LLC | § § § | |
| Defendants, | § § § | |
| v. | § § | |
| LEGAL FREIGHTLINES, LLC. | § § | |
| Third Party Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AGAINST ROBERT HEATH TRUCKING, INC. AND ROBERT HEATH LOGISTICS, INC., ORIGINAL COMPLAINT AGAINST LEGAL FREIGHTLINES, LLC, AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Beltex Corporation d/b/a Frontier Meats files this First Amended Complaint Against Defendants Robert Heath Trucking, Inc., and Robert Heath Logistics, Inc., and Original Complaint Against Defendant Legal Freightlines, LLC.

## I.
## SUMMARY OF ARGUMENTS

1.     Plaintiff Beltex Corporation d/b/a Frontier Meats entered into an agreement with Defendants Robert Heath Trucking, Inc. (hereinafter "Heath Trucking") and Robert Heath Logistics, Inc. (hereinafter "Heath Logistics") for the shipment of Plaintiff's goods by Defendants from Fort Worth, Texas to California. Legal Freightlines, LLC (hereinafter "Legal Freightlines")

ferried the shipment to its destination. During the shipment, Plaintiff's goods were damaged.

2.     Because Heath Trucking and Heath Logistics maintained an extraordinary degree of control over Legal Freightlines, Heath Trucking and Heath Logistics are liable for the actions of Legal Freightlines as their employee-agent, pursuant to the doctrine of respondeat superior.

3.     Heath Logistics was the agent of Heath Trucking under the doctrine of actual authority because Heath Trucking granted Heath Logistics authority to act on its behalf and Heath Logistics acted within the scope of that authority.

4.     Heath Logistics was the agent of Heath Trucking under the doctrine of apparent authority because Heath Trucking knowingly held out Heath Logistics, and allowed Heath Logistics to hold itself out, as having authority to act on Heath Trucking's behalf.

5.     Plaintiff seeks to recover the damages to Plaintiff's goods from Legal Freightlines under the authority of the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

6.     Plaintiff further seeks to recover the damages to Plaintiff's goods from Heath Trucking and Heath Logistics in their capacity as carriers or freight forwarders under the authority of the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

7.     As alternative to its Carmack Amendment claims against Heath Trucking and Heath Logistics, Plaintiff further seeks to recover the damages to Plaintiff's goods from Heath Trucking and Heath Logistics in their capacity as freight brokers for breach of contract and negligent destruction of Plaintiff's goods.

## II.
## THE PARTIES

8.     Plaintiff, Beltex Corporation d/b/a Frontier Meats (hereinafter referred to as

"Plaintiff" or "Frontier Meats"), is a Texas Corporation with its principal place of business in the Tarrant County, Texas.

9.      Defendant Robert Heath Trucking, Inc. (hereinafter referred to as "Heath Trucking"), is a corporation incorporated in the State of Texas that can be served through its registered agent, Terri Heath Shankle at 1201 East 40th Street, Lubbock, Texas 75238.

10.     Defendant Robert Heath Logistics, Inc. (hereinafter referred to as "Heath Logistics"), is a corporation incorporated in the State of Texas that can be served through its registered agent, James C. Shankle at 10880 Rockwall Road, Dallas, Texas 75238.

11.     Defendant Legal Freightlines, LLC (hereinafter referred to as "Legal Freightlines"), is a limited liability company organized in the State of California doing business in Texas who is not registered to do business in Texas and who can therefore be served through the Secretary of State of Texas.

### III.
### JURISDICTION AND VENUE

12.     This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. §1331, as this case involves questions of federal law.

13.     Venue is proper in, and Defendants  and Third-Party Defendant are subject to the personal jurisdiction of this Court because Defendants and Third-Party Defendant maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

### IV.
### FACTUAL ALLEGATIONS

14.     On or about May 2, 2018, Heath Trucking and Heath Logistics (collectively "Heath Defendants") entered into a shipping agreement with Frontier for the shipment of beef trimming

combos and boxed vacuum packaged meat (hereafter referred to as the "Shipment") to be transported from Fort Worth, TX to Los Angeles, CA.

15.     While Plaintiff discussed this arrangement with the Heath Defendants, the Heath Defendants held themselves out as either freight forwarders or common carriers.

16.     To wit, the individuals with whom Plaintiff communicated with regards to the shipping arrangement represented that they were acting on behalf of Heath Trucking. These individuals sent Plaintiff several emails with signature lines listing their employer as "Robert Heath Trucking, Inc." These emails represented that the individuals with whom Plaintiff had negotiated held titles such as "Sr. Logistics Coordinator" and "Senior Account Manager" with Heath Trucking.

17.     Further, Heath Trucking is registered as a motor carrier with the Federal Motor Carrier Safety Administration (FMCSA).

18.     Heath Trucking's website indicates that Heath Logistics is nothing more than a "division" of Heath Trucking which provides services "into and out of regions we do not typically operate with our asset based fleet." The website also indicates that Heath Trucking will haul freight to a particular region and arrange for "local delivery services."

19.     These facts led Plaintiff to believe that it was dealing with Heath Trucking either directly or through agents acting on its behalf. To that end, Plaintiff repeatedly addressed correspondence to Heath Trucking, rather than Heath Logistics.

20.     Plaintiff relied on the reputation of Heath Trucking when it entered the arrangement to ship its goods. Further, Plaintiff relied on the representations contained on Heath Trucking's website, and the information contained in the signature lines of several emails from representatives of the Heath Defendants when it made the decision to make shipping arrangements with the Heath

Defendants.

21.     On May 2, 2018, Defendant Legal Freightlines took possession of the Shipment.

22.     Upon taking possession, Legal Freightlines issued a bill of lading for the Shipment. The bill of lading contained no language limiting the liability of the either Legal Freightlines or the Heath Defendants. The Shipment was to be delivered before May 4, 2018 to Frontier's two customers in California. Frontier's first customer in California was to receive the beef trimming combos' portion of the Shipment and Frontier's Second customer in California was to receive the boxed vacuum packaged meat portion of the Shipment.

23.     During the journey, Legal Freightlines' truck malfunctioned and was unable to deliver the Shipment. This caused delay and spoliation of the Shipment. Eventually, Legal Freightlines sent another truck to complete the delivery.

24.     Frontier discovered that the Defendants' driver failed to deliver the Shipment to its two customers by May 4, 2018 and instead attempted to deliver and tender the Shipment to Frontier's first customer on or about May 7, 2018. As a result of Defendants failure to deliver on time, the meat which was not vacuum packed was not even fit for human consumption when the Shipment finally arrived. Of course, Frontier's first customer rejected the Shipment because it was totally unfit for its commercial purpose.

25.     In order to mitigate Frontier's damages, Frontier instructed Defendants to render only the spoiled, non-vacuum packed meats portion of the Shipment at a rendering facility, Darling International, located in close proximity to Frontier's first customer's facility and to proceed with delivering the boxed vacuum packed portion of the Shipment to Frontier's second customer; Golden West Trading Company. However, despite Frontier's directive, Defendants took it upon themselves to instruct the rendering company to unpack and render the entire Shipment, including

the boxed vacuum packaged portion of the Shipment which were unspoiled and fit for their commercial purpose. Further, Defendants failed to notify Frontier of its willful destruction of those portions which were as yet unspoiled. Frontier was only made aware of this when Golden West contacted Frontier on or about May 9, 2018, inquiring about the status of the boxed, vacuum packaged portion of the Shipment.

26. During the entire time that the Shipment was in the possession of Legal Freightlines, the Heath Defendants exercised a substantial degree of control over Legal Freightlines.

27. The Heath Defendants set exact parameters for the methods by which Legal Freightlines was to carry the shipment. The Heath Defendants mandated the precise temperature of the trailer, the schedule of the drivers, the number of workers which Legal Freightlines was to use on the Shipment, the standard of performance, and the exact route of the Shipment. In addition to these dictates, the Heath Defendants required that Legal Freightlines must clear all "PROBLEMS/RESCHEDULES" with the Heath Defendants before taking any action. Also, the Heath Defendants commanded Legal Freightlines to follow an eight-point instructional sheet on how to properly fuel its truck.

28. Further, the Heath Defendants set punitive fines for Legal Freightlines' failure to *daily* inform the Heath Defendants of the exact progress of the Shipment. These fines also applied to any failure abide by the strict schedule set by the Heath Defendants. To avoid these fines, Legal Freightlines had to seek the express permission of the Heath Defendants before deviating from previous instructions.

29. To control Legal Freightlines's performance, the Heath Defendants required that Legal Freightlines make daily reports to the Heath Defendants and utilize so-called "Macropoint"

technology. Macropoint technology provides real time tracking of any truck connected to the system. This technology thus allowed the Heath Defendants to monitor the exact location of the Shipment in real time, as well as receive various other analytic information. This Macropoint technology provides such a comprehensive mechanism for micromanagement that the Heath Defendants could not have monitored Legal Freightlines more closely absent a representative riding "shotgun" in the cab.

30.     The Heath Defendants instructed Legal Freightlines where to deliver the shipment upon discovering its spoliation.

31.     A representative of the Heath Defendants referred to the driver of the truck carrying the Shipment as "my driver" and requested additional information from Plaintiff so that the representative could instruct the driver how to perform the delivery.

32.     The Heath Defendants also policed the driver's hours, making certain that he was in compliance with applicable laws.

33.     Due to Defendants breach, negligence, delay, unilateral action, and unnecessary destruction of valuable boxed, vacuumed packaged meats, Frontier not only lost the value of the Shipment, but also incurred extra costs for additional and unnecessary unpacking and rendering costs.

34.     The Shipment included 15,066.37 lbs. of fresh trimming combos for Frontier's first customer valued at $25,038.08 and 324 boxes of beef cuts, weighing 17,746.42 lbs., valued at $72,459.71. Additionally, Frontier was forced to pay the rendering fee of $1,876.00.

35.     After the total loss of the Shipment, the Heath Defendants maintained that they were carriers within the meaning of the Carmack Amendment. Specifically, employees of the Heath Defendants claimed that the Heath Defendants were protected by federal regulations which

apply only to carriers within the meaning of the Interstate Commerce Act.

36.     After the loss of the Shipment, the Heath Defendants represented that Heath Logistics, a broker registered with FMCSA, was in fact the entity with which Plaintiff had an agreement. The Heath Defendants further represented that, despite their previous indications, they had acted as a broker, rather than as a carrier. This obviously did not comport with Plaintiff's understanding of the agreement.

37.     Frontier's attempts to resolve the aforementioned issues with Defendants directly were unsuccessful, causing Frontier to incur the additional costs of obtaining legal representation to resolve this matter. To date, Frontier has incurred over $104,873.79 in damages as a direct result of Defendants' negligence and failure to perform under the term of the contract entered into by and among the Parties to this lawsuit on May 2, 2018.

## V.
## AGENCY RELATIONSHIPS BETWEEN THE DEFENDANTS

### A.  **Respondeat Superior**

38.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

39.     The acts of Legal Freightlines, employee, were performed while in the employment of the Heath Defendants, and were within the scope of that employment or within the authority delegated to the employee.

40.     The Heath Defendants had the right to assign the Legal Freightlines tasks and maintained the right to control the means and details of the process used to accomplish that task.

41.     The Heath Defendants mandated the tools which Legal Freightlines employed, and the manner in which it used such tools.

42.     The Heath Defendants closely monitored and managed Legal Freightlines progress

during the job.

43.     The Heath Defendants maintained the right to order Legal Freightlines to perform in a manner prescribed solely by the Heath Defendants and required Legal Freightlines to seek express permission before deviating from Heath Defendants' strict orders.

**B.  <u>Actual Authority</u>**

44.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

45.     At the time that the events made the basis of this suit occurred, Heath Trucking had intentionally granted Heath Logistics authority to act on Heath Trucking's behalf.

46.     Alternatively, at the time that the events made the basis of this suit occurred, Heath Trucking had, through lack of due care, allowed Heath Logistics to believe that actions taken on behalf of Heath Trucking were authorized.

47.     At the time that the events made the basis of this suit occurred, Heath Logistics was acting within the scope of the authority granted by Heath Trucking.

**C.  <u>*Alternatively*, Apparent Authority</u>**

48.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

49.     During the incidents made basis of this suit, Heath Trucking held Heath Logistics out as having authority to act on Heath Trucking's behalf.

50.     During the incidents made basis of this suit, Heath Trucking knowingly permitted Heath Logistics to hold itself out as having authority to act on Heath Trucking's behalf. Alternatively, Heath Trucking acted with such a lack of ordinary care as to clothe Heath Logistics with the indicia of authority to act on Heath Trucking's behalf.

51.     Heath Trucking's conduct caused Plaintiff to reasonably believe that Heath Logistics had authority to act on Heath Trucking's behalf.

52.     Plaintiff justifiably relied on Heath Logistics' authority to act on Heath Trucking's behalf.

## VI.
## CLAIMS AGAINST DEFENDANT LEGAL FREIGHTLINES

### CLAIM UNDER THE CARMACK AMENDMENT

53.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

54.     Plaintiff brings a claim under the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706(a)(1).

55.     Legal Freightlines is a carrier for the purposes of the Carmack Amendment.

56.     Plaintiff's goods were delivered to Legal Freightlines in good condition.

57.     Legal Freightlines issued a bill of lading for the transportation of Plaintiff's goods.

58.     Plaintiff's goods were damaged before delivery to their final destination.

59.     Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

## VII.
## CLAIMS AGAINST DEFENDANT HEATH TRUCKING

### Count One: CLAIMS UNDER THE CARMACK AMENDMENT

60.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

61.     Plaintiff brings a claim under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), (2).

62.     Heath Trucking is a carrier or freight forwarder for the purposes of the Carmack Amendment.

63.     Plaintiff's goods were delivered to Heath Trucking, by and through its employee-agent Legal Freightlines, in good condition.

64.     Heath Trucking, by and through its employee-agent Legal Freightlines, issued a bill of lading for the transportation of Plaintiff's goods.

65.     Plaintiff's goods were damaged before delivery to their final destination.

66.     Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

## Count Two: *Alternatively*, BREACH OF CONTRACT

67.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

68.     As alternative to Count One against Heath Trucking, Heath Trucking is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

69.     Plaintiff and Heath Trucking, by and through its agent Heath Logistics, entered into a valid contract whereby Heath Trucking agreed to provide shipping services.

70.     Plaintiff fully performed its obligations under the contract.

71.     Heath Trucking breached its contractual obligations by failing to adequately ensure the safety of the Shipment, allowing it to be destroyed.

72.     Plaintiff has suffered $104,873.79 in damages as a result of Heath Trucking's breach.

## Count Three: *Alternatively*, NEGLIGENCE

PLAINTIFF'S FIRST AMENDED COMPLAINT

73.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

74.     As alternative to Count One against Heath Trucking, Heath Trucking is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

75.     As broker, Heath Trucking had a legal duty find, negotiate with, and hire a reasonably competent carrier for the shipment of Plaintiff's goods. This duty also encompasses an obligation to refrain from entrusting Plaintiff's goods to a carrier which would expose the goods to unreasonable risk of loss.

76.     Heath Trucking breached this legal duty by failing to hire a reasonably competent carrier and by hiring one which was improperly insured, exposing Plaintiff's goods to unreasonable risk.

77.     In breaching this duty, Heath Trucking failed to act as a person of ordinary prudence would under similar circumstances.

78.     Plaintiff suffered $104,873.79 in damages which were proximately caused by the conduct of Heath Trucking.

## VIII.
## CLAIMS AGAINST DEFENDANT HEATH LOGISTICS

### Count One: CLAIMS UNDER THE CARMACK AMENDMENT

79.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

80.     Plaintiff brings a claim under the Carmack Amendment, 49 U.S.C. § 14706(a)(1), (2).

81.     Heath Logistics is a carrier or freight forwarder for the purposes of the Carmack

Amendment.

82.     Plaintiff's goods were delivered to Heath Logistics, by and through its employee-agent Legal Freightlines, in good condition.

83.     Heath Logistics, by and through its employee-agent Legal Freightlines, issued a bill of lading for the transportation of Plaintiff's goods.

84.     Plaintiff's goods were damaged before delivery to their final destination.

85.     Plaintiff has incurred $104,873.79 in damages as a result of the damage to Plaintiff's goods.

## Count Two: *Alternatively*, BREACH OF CONTRACT

86.     Plaintiff incorporates by reference each and every of the preceding allegations as though fully set forth herein.

87.     As alternative to Count One against Heath Logistics, Heath Logistics is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

88.     Plaintiff and Heath Logistics entered into a valid contract whereby Heath Trucking agreed to provide shipping services.

89.     Plaintiff fully performed its obligations under the contract.

90.     Heath Logistics breached its contractual obligations by failing to adequately ensure the safety of the Shipment, allowing it to be destroyed.

91.     Plaintiff has suffered $104,873.79 in damages as a result of Heath Logistics' breach.

## Count Three: *Alternatively,* NEGLIGENCE

92.     Plaintiff incorporates by reference each and every of the preceding allegations as

though fully set forth herein.

93.     As alternative to Count One against Heath Logistics, Heath Logistics is a broker within the meaning of 49 U.S.C § 13102, not a carrier or freight forwarder, and is thus outside the scope of the Carmack Amendment.

94.     As broker, Heath Logistics had a legal duty find, negotiate with, and hire a reasonably competent carrier for the shipment of Plaintiff's goods. This duty also encompasses an obligation to refrain from entrusting Plaintiff's goods to a carrier which would expose the goods to unreasonable risk of loss.

95.     Heath Logistics breached this legal duty by failing to hire a reasonably competent carrier and by hiring one which was improperly insured, exposing Plaintiff's goods to unreasonable risk.

96.     In breaching this duty, Heath Logistics failed to act as a person of ordinary prudence would under similar circumstances.

97.     Plaintiff suffered $104,873.79 in damages which were proximately caused by the conduct of Heath Logistics.

## IX.
## ATTORNEY'S FEES (as to Breach of Contract Claims)

98.     Because of Defendants' conduct, Plaintiff has been compelled to engage the services of attorneys to prosecute these claims. Plaintiff is entitled to recover a reasonable sum for the necessary services of the attorneys in the preparation and trial of this action and for any appeals to the circuit court of appeals or the Supreme Court pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and 38.001.

## X.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff Beltex Corporation d/b/a Frontier Meats respectfully prays the court to enter a judgment in its favor against Defendants and issue an order:

a. Entering judgment in the amount of all damages suffered by Plaintiff as a result of the damage to Plaintiff's goods;

b. Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action;

c. Awarding reasonable and necessary attorney's fees; and

d. Awarding such other general and equitable relied as this Court deems equitable and just.

## XI.
## JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

TAILIM SONG LAW FIRM

*/s/ Tailim Song*

_____

Tailim Song
State Bar No. 00792845
tsong@tailimsong.com
8111 LBJ Freeway, Suite 480
Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On October 14, 2019, the foregoing document was filed with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or *pro se* parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Tailim Song*

_____

Tailim Song

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BELTEX CORPORATION                §
                                  §
VS.                               §        ACTION NO. 4:19-CV-133-Y
                                  §
ROBERT HEATH TRUCKING, INC.,      §
ET AL.                            §

ORDER GRANTING MOTION TO DISMISS
AND SETTING DEADLINE FOR AMENDED COMPLAINT

Pending before the Court is Defendants' Motion to Dismiss (doc. 14) brought pursuant to Federal Rule of Civil Procedure 12(b)(6). After review of the motion, the related briefs, and the applicable law, the Court concludes that the motion should be and hereby is GRANTED.

Because Defendants asserted the basis for which they now seek dismissal in the answers they filed prior to their motion to dismiss, and because Plaintiff has failed to demonstrate that it will suffer any prejudice, the Court construes Defendants' motion as one for judgment on the pleadings under Rule 12(c). *See Gill v. Devlin*, 867 F. Supp. 2d 849, 853 (2012) (Means, J.) ("Because a post-answer Rule 12(b)(6) motion is untimely, the Court must consider [the] motion to dismiss to be one seeking dismissal on the basis of the pleadings under Rule 12(c)."); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (approving district court's treatment of Rule 12(b)(6) motion to dismiss filed after filing of the defendant's answer as one for judgment on the pleadings under Rule 12(c)). After so doing, and after review of the parties' briefs and the allegations in

Plaintiff's petition, it is clear that the motion must be granted. Plaintiff's state-law claims for breach of contract, negligence, and gross negligence arising as a result of the alleged untimely delivery and resulting spoilage of certain beef goods shipped in interstate commerce by common carrier are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(a)(1). *See Hoskins v. Bekins Van Lines*, 343 F.3d 769, 777-78 (5th Cir. 2003) (concluding that "Congress intended for the Carmack Amendment to provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier* [and thus] the complete pre-emption doctrine applies"); *Hayes v. Stevens Van Lines, Inc*. 2015 WL 11023794, *2-4 (N.D. Tex. Jan. 27, 2015) (O'Connor, J.) (dismissing state-law claims for negligence and breach of contract as preempted by the Carmack Amendment).

Plaintiff's response to the motion alternatively requests leave to amend to assert a claim for relief under the Carmack Amendment. (Pl.'s Resp. (doc. 19) 5.) That request is GRANTED. If Plaintiff desires to pursue its claims, it must file an amended complaint asserting a claim under the Carmack Amendment no later than **October 16, 2019**, or its claims will be dismissed.

SIGNED September 18, 2019.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION TO DISMISS AND SETTING DEADLINE FOR AMENDED COMPLAINT - Page 2
TRM/chr

FILED
TARRANT COUNTY
12/12/2018 11:32 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. **236-304923-18** _____

| | | |
|---|---|---|
| BELTEX CORPORATION d/b/a | § | IN THE DISTRICT COURT |
| FRONTIER MEATS, | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| | § | |
| ROBERT HEATH TRUCKING, INC. AND | § | |
| ROBERT HEATH LOGISTIC, INC. | § | |
| *Defendants.* | § | \_\_\_\_\_ JUDICIAL DISTRICT |

### <u>PLAINTIFF'S ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Beltex Corporation d/b/a Frontier Meats and files this, its Original Petition, complaining of Robert Heath Trucking, Inc. and Robert Heath Logistic, Inc., (hereafter, collectively, referred to as "Defendants") and would respectfully show the Court as follows:

### I.   <u>PARTIES</u>

1.    Plaintiff, Beltex Corporation d/b/a Frontier Meats (hereinafter referred to as "Plaintiff" or "Frontier Meats"), is a Texas Corporation with its principal place of business in the Tarrant County, Texas.

2.    Defendant Robert Heath Trucking, Inc. (hereinafter referred to as "Heath Trucking"), is a corporation incorporated in the State of Texas that can be served through its registered agent, Terri Heath Shankle at 1201 East 40th Street Lubbock, Texas 75238.

3.    Defendant Robert Heath Logistic, Inc. (hereinafter referred to as "Heath Logistic"), is a corporation incorporated in the State of Texas that can be served through its registered agent, James C. Shankle at 10880 Rockwall Road Dallas, Texas 75238.

---

## II.    DISCOVERY LEVEL AND RULE 47 STATEMENT

4.         Discovery shall be conducted under Level 2, in accordance with the Texas Rule of Civil Procedure 190.3.

5.         Plaintiff seeks monetary relief over $100,000.00 but not more than $ 200,000.00.

6.         The amount of damages sought is within the jurisdictional limits of the court.

7.         Plaintiff requests that the court grant judgment for the above and for all other relief to which Plaintiff is entitled.

## III.   JURISDICTION AND VENUE

8.         This Court has jurisdiction over this matter as the amount in controversy is within the jurisdictional limits of this Court.

9.         Venue in Tarrant County is proper in this cause under Section 15.002(a)(4) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to this suit occurred in Tarrant County, Texas.

## IV.   FACTUAL BACKGROUND

10.        On or about May 2, 2018, Defendants entered into a shipping agreement with Frontier for the shipment of beef trimming combos and boxed vacuum packaged meat (hereafter referred to as the "Shipment") to be transported from Fort Worth, TX to Los Angeles, CA.

11.        The Shipment left Tarrant, County, Texas on May 2, 2018 and was to be delivered before May 4, 2018 to Frontier's two customers in California. Frontier's first customer in California was to receive the beef trimming combos' portion of the Shipment and Frontier's Second customer in California was to receive the boxed vacuum packaged meat portion of the Shipment.

12.        Frontier discovered that the Defendants' driver failed to deliver the Shipment to its two customers by May 4, 2018 and instead attempted to deliver and tender the Shipment to Frontier's

first customer on or about May 7, 2018. As a result of Defendants failure to deliver on time, Frontier's first customer rejected the beef trimming combos' portion of the Shipment, since it was no longer fit for human consumption.

13.     According to Defendants, there were originally two drivers designated by Defendants to ensure the delivery reach its destination on time. However, while traveling through Texas, an alleged breakdown of the delivery truck occurred. Following the breakdown, one of the two drivers abandoned the delivery at some point during the transportation of the Shipment, leaving only the one driver who was unable to deliver on time, thus causing the beef trimmings to subsequently spoil and be rejected by the Frontier's first customer upon its late delivery.

14.     In order to mitigate Frontier's damages, Frontier proceeded to instruct Defendants to render only the spoiled, non-vacuum packed meats portion of the Shipment at a rendering facility, Darling International, located in close proximity to Frontier's first customer's facility and to proceed with delivering the boxed vacuum packed portion of the Shipment to Frontier's second customer; Golden West Trading Company. However, despite Frontier's directive, Defendants took it upon themselves to instruct the rendering company to unpack and render the entire Shipment, including the boxed vacuum packaged portion of the Shipment. Further, Defendants failed to notify Frontier of its malfeasance. Frontier was only made aware of this when Golden West contacted Frontier on or about May 9, 2018, inquiring about the status of the boxed, vacuum packaged portion of the Shipment.

15.     Due to Defendants breach, negligence, delay, unilateral action, and unnecessary destruction of valuable boxed, vacuumed packaged meats, Frontier not only lost the value of the Shipment, but also incurred extra costs for additional and unnecessary unpacking and rendering costs.

16.    The Shipment included 15,066.37 lbs. of fresh trimming combos for Frontier's first customer valued at $25,038.08 and 324 boxes of beef cuts, weighing 17,746.42 lbs., valued at $72,459.71. Additionally, Frontier was forced to pay the rendering fee of $1,876.00.

17.    Frontier's attempts to resolve the aforementioned issues with Defendants directly were unsuccessful, causing Frontier to incur the additional costs of obtaining legal representation to resolve this matter. To date, Frontier has incurred over $104,873.79 in damages as a direct result of Defendants' negligence and failure to perform under the term of the contract entered into by and among the Parties to this lawsuit on May 2, 2018.

## V.    <u>CAUSES OF ACTION</u>

### BREACH OF CONTRACT

18.    Plaintiff incorporates by reference as if set forth in full herein the allegations of paragraphs 10 through 17.

19.    There is a valid contract between Plaintiff and Defendants.

20.    Plaintiff performed or tendered performance per the terms of the contract.

21.    Defendants breached the contract by failing to perform pursuant the terms of the contract.

22.    Plaintiff suffered damages as a result of the breach.

### In the Alternative, NEGLIGENCE

23.    Plaintiff incorporates by reference as if set forth in full herein the allegations of paragraphs 10 through 17.

24.    By taking possession of perishable goods, Defendants owed a duty of care to Plaintiff.

25.    Defendants, as the bailee of Plaintiff's Shipment, knew or should have known that the shipment consisting of perishable goods was time sensitive, and that should Defendants fail to deliver on time the goods would spoil. The occurrence of the incidents from which this lawsuit

stems and caused the damages Plaintiff incurred implies negligence, in that but for Defendants' truck breaking down and not operating in a commercially reasonable manner so to deliver the perishable Shipment with in a the time agreed upon per the contract by and among the parties of this lawsuit as well as Defendants second driver abandoning Defendants' first driver during the transportation of the Shipment as well as Defendants' failure to follow Plaintiff's instruction on the mitigation of Plaintiff's damages resulting from Defendant breach of contract, Plaintiff would not have sustained damages or the damages Plaintiff did sustain would not have been as excessive as it is today.

26.     Each of the aforementioned acts and omissions, singularly or in combination with others, constituted negligence which proximately caused the occurrence that made the basis of Plaintiff action, the failure of the Shipment being accepted by Plaintiff's costumers and Plaintiff's inability to properly mitigate its damages causing the unnecessary compounding of Plaintiff's damages, and resulted in Plaintiff's injuries and damages.

**In the Alternative, GROSS NEGLIGENCE**

27.     Plaintiff incorporates by reference as if set forth in full herein the allegations of paragraphs 10 through 17.

28.     Defendants were subjectively aware and knew of the risks to the value of the Shipment resulting from Defendants' truck's breakdown, Defendants' second driver's abandonment, and Defendants' failure, as the bailee of Plaintiff's Shipment, to strictly comply with Plaintiff's attempts to mitigate the damages caused by Defendants, yet Defendants still failed to give Plaintiff timely notices or to take the reasonable and proper measure to ensure Plaintiff's damages would not be compounded as they were in this case or at least provide Plaintiff with a fair chance to mitigate the damages Defendants' caused.

29.     Defendants breached their duties by failing to make Plaintiff aware of Defendants issues, and preventing Plaintiff from mitigating its damages resulted in Plaintiff suffering compounded and unnecessary injuries for which Defendants have made no effort to assist Plaintiff with and in fact sent Plaintiff an invoice to pay additional for Defendants' flagrant failure to uphold its duties to Plaintiff.

30.     But for the Defendants conscious disregard for the Plaintiff's value and rights associated with the Shipment contributed to and created, much of Plaintiff's compounded injuries would not have occurred. Defendants were the direct cause of much of Plaintiff's injuries without taking reasonable, cost effective measure to make the incidents less likely to occur.

31.     Defendants owed a duty to Plaintiff to notice, protect, warn, and follow Plaintiff's instruction on mitigating Plaintiff's damage related to the Shipment that Defendants had the sole care, custody, and control over.

32.     Defendants knew or should have known risks and danger involved with not noticing, protecting, warning, or following Plaintiff's instruction on mitigating Plaintiff's damage related to the Shipment that Defendants had the sole care, custody, and control over.

33.     Accordingly, Plaintiff seeks damages from Defendants as well as requests non-economic and exemplary damages due to the reckless, extreme actions of the Defendants.

## VI.     ATTORNEY'S FEES (as to Breach of Contact Claims)

34.     Because of Defendants' conduct, Plaintiff has been compelled to engage the services of attorneys to prosecute these claims. Plaintiff is entitled to recover a reasonable sum for the necessary services of the attorneys in the preparation and trial of this action and for any appeals to the court of appeals or the Texas Supreme Court pursuant to Tex. Civ. Prac. & Rem. Code § 37.009 and 38.001.

## VII.  <u>PRAYER</u>

WHEREFORE, Plaintiff Beltex Corporation d/b/a Frontier Meats respectfully requests that Defendants, Robert Heath Trucking, Inc. and Robert Heath Logistic, Inc., be cited to appear and answer herein, and after a final hearing, Plaintiff, Beltex Corporation d/b/a Frontier Meats, have judgment against Defendants, Robert Heath Trucking, Inc. and Robert Heath Logistic, Inc. as follows:

1.  Actual and economic damages resulting from Defendants' breach of contract.

2.  Prejudgment interest;

3.  Postjudgment interest;

4.  Costs of court;

5.  If the court finds Defendants acted recklessly with gross negligence, exemplary damages;

6.  attorney's fees; and

7.  All further relied, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

TAILIM SONG LAW FIRM

/s/ *Haben Tewelde*

_____

HABEN TEWELDE
State Bar No. 24096570
btewelde@tailimsong.com
TAILIM SONG
State Bar No. 00792845
tsong@tailimsong.com
JORDAN WHIDDON
State Bar No. 24093350
jwhiddon@tailimsong.com
8111 LBJ Freeway, Suite 480

Dallas, Texas 75251
(214) 528-8400 Telephone
(214) 528-8402 Facsimile
**ATTTORNEYS FOR PLAINTIFF**